## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

DARREN L. BLACK,

      Petitioner,

v.                                              Case No. 4:23-cv-271-WS-MJF

RICKY DIXON,

      Respondent.

_____/

## **REPORT AND RECOMMENDATION**

Darren L. Black, proceeding *pro se*, has filed a second amended petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 8. Respondent ("the State") answered, providing relevant portions of the state-court record. Docs. 15, 16. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Black is not entitled to habeas relief.

### I.    BACKGROUND FACTS AND PROCEDURAL HISTORY

The following facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. *See* Doc. 16-9, Ex. I at 542-1357 in ECF (Trial Tr.). On July 28, 2012, several residents of the

Miccosukee community met at the Dirty Spoon for a wedding reception. The attendees included, among others, Black, Roderick Hall (Black's co-defendant), Michael Carr (the victim), Patrick Murray, Louis Bunch and Telisha Woody. Black and Carr got into an argument about racing cars; they were separated; Carr left, but later returned.

After Carr returned, Black called him a derogatory name, and Carr punched Black in the mouth. After this encounter, a smaller group of attendees, including Carr, Murray, Woody and Bunch left the reception and went to Murray's residence.

A short time later, Hall and Black pulled into Mr. Murray's driveway. Hall was driving. Black was in the front passenger's seat. Black exited the car holding a handgun and shouted at Carr, "What you want to do now? I'm here." Doc. 16-9, Ex I at 702 in ECF. Carr approached Black and the two argued. Mr. Bunch got between them. Mr. Murray saw Black with the handgun, ordered him to leave, and told him that he (Murray) would not tolerate gunplay in his yard. Murray then went inside his house.

Black got back into Hall's car. Hall started backing out of the driveway just as Murray returned to the yard with a pump 16-gauge

sawed-off shotgun and fired one warning shot straight into the air. Hall stopped the car on the roadside in front of Murray's yard. Black got out and challenged Carr to a fist-fight in the road.

Carr ran to Hall's car and argued with Black. Murray followed Carr and stood near the back of Hall's car with the shotgun at his side. As Black and Carr argued, Black walked around the front of Hall's car, past the driver's-door to the back passenger door. Black then opened the back passenger door, held the handgun out, shot Carr once, and jumped into the back seat behind Hall. Murray fired back with the shotgun, hitting the back windshield of Hall's car as Hall drove off.

Black's bullet hit Carr in the side, tore through his abdomen and lodged in his spine. Carr walked back to the yard and told Mr. Bunch, "that [expletive] shot me." Doc. 16-9, Ex. I at 666 in ECF. Carr was taken to the hospital where he died of the gunshot wound.

In Leon County Circuit Court Case No. 2012-CF-2432, Black was charged by indictment with First-Degree Premeditated Murder with a Firearm (Count I) and Possession of a Firearm by a Convicted Felon (Count II). Doc. 16-3, Ex. C. Hall was charged with Accessory After-the-Fact. Doc. 16-9, Ex. I at 546 in ECF.

Black and Hall were tried together. Black's trial strategy was to raise reasonable doubt that the homicide was premeditated and to establish a case of justifiable homicide by self-defense, or excusable homicide. *See* Doc. 16-9, Ex. I at 561- 67 in ECF (Opening Statement); *Id.* at 1289-97 in ECF (Closing Statement); *see also* Doc. 16-26, Ex. Z at 1719-41 in ECF (Counsel's Evidentiary Hr'g Test.).

The jury found Black guilty of the lesser-included offense of Second-Degree Murder with a Firearm on Count I, and guilty as charged on Count II. Doc. 16-5, Ex. E. The trial court adjudicated Black guilty and sentenced him to 30 years of imprisonment with a 25-year mandatory minimum for the murder, and a concurrent 15-year term of imprisonment for the firearm possession. Doc. 16-8, Ex. H. The Florida First District Court of Appeal ("First DCA") affirmed the judgment on October 27, 2015, without opinion. *Black v. State*, No. 1D14-2952, 177 So. 3d 609 (Fla. 1st DCA 2015) (Table) (per curiam) (copy at Doc. 16-13, Ex. M).

On May 17, 2019, Black filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended. Doc. 16-14, Ex. N (Mot.); Doc. 16-17, Ex. Q (Am. Mot.). The

Page 4 of 31

amended motion raised six claims. Doc. 16-17, Ex. Q. The state circuit court set the matter for an evidentiary hearing and appointed counsel to assist Black. Doc. 16-26, Ex. Z at 73-74.

On July 16, 2020, Black, through counsel, filed a motion to amend to add two more claims (Grounds 7 and 8). Doc. 16-21, Ex. U. The state circuit court granted leave to amend, but summarily denied Grounds 7 and 8. Doc. 16-22, Ex. V. The state court conducted an evidentiary hearing on six claims (Grounds One through Six). Doc. 16-26, Ex. Z at 1714-63 in ECF (Evidentiary Hr'g. Tr.); *Id*. at 96-1711 in ECF (Evidentiary Hr'g. Exs.). After hearing, the state court denied relief on all claims. *Id*. Doc. 16-24, Ex. X. The First DCA per curiam affirmed without opinion. *Black v. State*, No. 1D22-0125, 361 So. 3d 317 (Fla. 1st DCA May 19, 2023) (Table) (copy at Doc. 16-29, Ex. CC). The mandate issued June 19, 2023. Doc. 16-29, Ex. CC.

Black filed his original federal habeas petition on June 21, 2023. Doc. 1. Black's second amended petition raises two claims: (1) the trial court erred by denying a defense motion for mistrial based on a violation of *Bruton v. United States*, 391 U.S. 123 (1968); and (2) trial counsel was ineffective for failing to move to sever Black's trial from that of Hall. Doc.

8 at 7-16. The State asserts that Black is not entitled to habeas relief because he fails to satisfy § 2254(d)'s demanding standard. Doc. 15 at 21-32.

## II.    SECTION 2254 STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[1] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may

---

[1] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-13 (O'Connor, J., concurring). In applying the "unreasonable application" clause, the federal court defers to the state court's reasoning unless the state court's application of the governing legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). In *Harrington v. Richter*, 562 U.S. 86 (2011), the Supreme Court warned that, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable

application" clause of § 2254(d)(1), the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, however, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

### III.    DISCUSSION

**<u>Ground One</u>**      **<u>"Trial Court erred by denying Defense Counsel's Motion for a mistrial which violated Petitioner's confrontation clause." Doc. 8 at 7.</u>**

This claim involves the admission of co-defendant Hall's videorecorded interrogation by police. Doc. 8 at 7-9; Doc. 16-9, Ex. I at 938-80 (Trial Tr.). During that interview, Hall made a statement that incriminated Black, namely, that he saw Black with a gun during the incident at Mr. Murray's residence. *Id.* at 973-80.

Black claims that the admission of Hall's statement violated Black's right to confrontation under *Bruton*, because Hall elected not to testify and, therefore, Black did not have an opportunity to cross-examine Hall regarding the incriminating statement. Doc. 8 at 7-9. The parties agree that Black exhausted this claim by raising it on direct appeal. Doc. 8 at 9; Doc. 15 at 21-27.

#### A.    *The State Court's Decision*

At the close of the State's case and after Black and Hall announced their decisions not to testify, Black's trial counsel moved for a severance and mistrial based on Hall's statement. Doc. 16-9, Ex. I at 1164-84 in

ECF. The trial court denied the motion. The trial court reasoned that

although the admission of Hall's statement violated Black's rights under

*Bruton*, Black invited the error and, in any event, the error was harmless.

Doc. 16-9, Ex. I at 1184-88. The trial court explained, in relevant part:

> The defense did not object again to the introduction of either
> of the defendants' recorded interviews. So those are in
> evidence. I also think that this is – Mr. Hall, I – meaning the
> defendant, Mr. Rodrick Hall, never conceded that they went
> anywhere but straight from the Dirty Spoon to Mr. Murray's
> residence. He never acquiesced that they went anywhere else
> to go get a gun and come back to Mr. Murray's residence. He
> never, in fact, says that he knew Mr. Black had a gun prior to
> when the —for lack of a better word – shootout occurred on
> Miccosukee Road.
>
> There are certainly several witnesses who indicated that
> they saw the defendant, Mr. Black, with a gun in the yard.
> They saw Mr. Black with a gun in the street. Several testified
> they saw him shoot Michael Carr. Some heard shots, but
> didn't see the shooting.
>
> So, there is, of course, for a jury to determine whether or
> not Mr. Black was acting in self-defense to Mr. Murray's
> shotgun blasts. That's up to a jury to determine. But there is
> ample evidence that puts a gun in Mr. Black's hand. So, at
> least from a harmless error analysis, it's harmless because
> there's too many other witnesses that saw Mr. Black with a
> gun on that night.
>
> Now, you know, of course, appellate courts may
> determine differently. I did find a line of cases that actually
> go into a harmless error analysis. So, I think it would be
> arguably different, if, number one, the defense had objected;

number two, Mr. Hall had made statements about him and Mr. Black going to Mr. Black's house, retrieving a gun and that was the only testimony that would provide a premeditation argument was attributed solely to Mr. Hall's testimony, but he didn't concede any of those points. So – and there are no other witnesses that have testified – well, there's one that we've heard about, kind of out there that said he saw Mr. Black with the gun at the Dirty Spoon.

But there's absolutely no evidence in this case, other than the direction of the traveling of the vehicle before it gets at Mr. Murray's house, of the two codefendants going anywhere. So, I guess, if we take an analysis, had the jury not heard Mr. Hall's statements about Mr. Black having a gun, is there sufficient evidence beyond a reasonable doubt that Mr. Black had a gun. I think that my recollection of trying to get through these cases over lunch, there is. And the jury is going to have to determine that.

Clearly, Mr. Hall's statements incriminate Mr. Black, but I'm going to find that it's harmless in light of all of the other circumstances, and given the fact that we have had two trials, there's never been an objection. I think you do have to look at the trial separately, because this is a trial. We have to have a record to go up on appeal. Counsel had no objection to those recordings being admitted. So, those two coupled together, but most important being I believe any error in admitting those statements are harmless Bruton errors.

Doc. 16-9, Ex. I at 1185-88 in ECF.

On direct appeal, Black argued that the trial court reversibly erred when it denied Black's motion for a mistrial, because the trial court misapplied Florida's harmless error standard. Doc. 16-10, Ex. J at 37-42.

In Black's view, the court "applied a sufficiency-of-the-evidence or overwhelming evidence test, contrary to <u>State v. DiGuilio</u>, 491 So. 2d 1129, 1139 (Fla. 1986)." Doc. 16-10, Ex. J at 40. The State countered that the trial court did not err in denying a mistrial because Black strategically waived any objection to the *Bruton* violation and used Hall's statement to his benefit to argue the theories of self-defense and lack of premeditation. Doc. 16-11, Ex. K at 10-18.

The First DCA summarily affirmed Black's conviction without explanation. Doc. 16-13, Ex. M. The First DCA's decision is an "adjudication on the merits" of Black's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

### B.  *Clearly Established Federal Law*

"The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant 'to be confronted with the witnesses against him.'" *Cruz v. New York*, 481 U.S. 186, 189 (1987) (quoting U.S. Const.

amend. VI). This guarantee "includes the right to cross-examine witnesses." *Cruz*, 481 U.S. at 189.

An accused is deprived of his rights under the Confrontation Clause when a non-testifying co-defendant's statement that implicates the accused is admitted at their joint trial. *Bruton*, 391 U.S. at 126-28; *Cruz*, 481 U.S. at 189-90 ("Where two or more defendants are tried jointly, therefore, the pretrial confession of one of them that implicates the others is not admissible against the others unless the confessing defendant waives his Fifth Amendment rights so as to permit cross-examination.").

 If raised on direct appeal, a "*Bruton* violation requires a new trial unless the error was harmless beyond a reasonable doubt." *United States v. Schwartz*, 541 F.3d 1331, 1353 (11th Cir. 2008) (citing *Schneble v. Florida*, 405 U.S. 427, 432 (1972)). "On *collateral* review [such as federal habeas review], a federal constitutional error is harmless unless there is 'actual prejudice,' meaning that the error had a 'substantial and injurious effect or influence' on the jury's verdict." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012) (quoting *Brecht v. Abrahamson*, 507

U.S. 619, 637 (1993)).[2] Thus, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (quoting *Brecht*, 507 U.S. at 633-34).

The relevant inquiry under *Brecht* is "what effect the error had or reasonably may be taken to have had upon the jury's decision" and its impact on the jurors' minds in the total setting. *Bonner v. Holt*, 26 F.3d 1081, 1083 (11th Cir. 1994) (quoting *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)). When analyzing the effect of a Confrontation Clause violation, courts consider: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, . . . and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). "Errors are harmless if there is significant corroborating

---

[2] *See Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) ("We hold that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht, supra*, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* [*v. California*], 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 [(1967)].").

evidence or the state's evidence of guilt is overwhelming." *Hull.* 572 F. App'x at 701-02 (citing *Guzman v. Sec'y, Dep't of Corr.*, 663 F.3d 1336, 1355 (11th Cir. 2011)).

## C.   *Black Is Not Entitled to Habeas Relief*

Black fails to show that the admission of Hall's statement had a substantial and injurious effect or influence on the jury's verdict. Despite the *Bruton* error, the content of Hall's statement as it concerned Black was not important to the prosecution's case, and was entirely cumulative of and corroborated by other untainted, overwhelming evidence.

Hall stated that he saw Black with a gun at Patrick Murray's residence. Three other eyewitnesses—Telisha Woody, Louis Bunch and Patrick Murray—also testified that they saw Black holding a handgun at Murray's residence. Doc. 16-9, Ex. I at 597, 660-61, 702 in ECF. Patrick Murray retrieved his shotgun when he saw that Black had a gun. *Id.* at 702-04 in ECF. Patrick Murray was standing at Hall's car with Carr when Carr was shot, and actually saw Black shoot Carr. *Id.* at 705, 708-09 in ECF. Louis Bunch testified that he, too, saw Black shoot Carr. Expert testimony concerning the path of the bullet through Carr's body corroborated Murray's testimony of where he, Carr, and Black were

standing when Black shot Carr. *Id*. at 887-88. Louis Bunch and Patrick Murray both testified that the sequence of shots fired was shotgun, pistol, shotgun. *Id*. at 662-663, 665, 694, 704-06 in ECF. The projectile recovered from Carr's spine was .38 caliber. *Id*. at 830-32, 885-86 in ECF. A firearm's expert testified that the .38 caliber projectile could not possibly have been fired from a shotgun. *Id*. at 885-88 in ECF. While serving a search warrant at Black's residence, police found a .38 caliber casing in Black's front yard. *Id*. at 777-79, 787 in ECF.

In the prosecutor's lengthy closing argument, he discussed Hall's statement almost exclusively with regard to *Hall's* guilt. *Id*. at 1266-67, 1273-77 in ECF. The prosecutor even emphasized in rebuttal: "[Rodrick Hall's defense counsel] argues that, you know, we used Rod Hall's statement against Daren Black. We put it in against Darren Black. That's not true members of the jury. We put Rod Hall's statement in in our prosecution against Rodrick Hall." *Id*. at 1312. In contrast, Black's defense counsel relied extensively on Hall's statement to argue self-defense and lack of premeditation. Doc. 16-9, Ex. I at 1291-97 in ECF.

In short, even when scrubbed of the *Bruton* error, the case against Black for second-degree murder was overwhelming. Hall's statement

that Black had a gun was cumulative, corroborated, sporadically referenced by the prosecution, and unimportant relative to the rest of the prosecution's evidence.[3]

The *Bruton* error did not have a substantial and injurious effect or influence on the jury's verdict. Black, therefore, is not entitled to habeas relief on Ground One.

**Ground Two**          **"Trial Counsel Provided Ineffective Assistance of Counsel thus Violating Petitioner's Fifth, Sixth and Fourteenth Amendments to the United States Constitution By Failing To Sever Trials and Be Able To Confront Witness against Petitioner In Trial." Doc. 8 at 10.**

Black alleges that trial counsel was ineffective for failing to file a motion to sever his trial from Hall's trial, and that counsel's error made

---

[3] The only indicator, according to Black, that the *Bruton* error was not harmless is that during deliberations the jury asked to review Hall's videotaped interrogation. Doc. 8 at 8. The jury, though, contemporaneously was deliberating Hall's guilt on the charge of accessory-after-the-fact. Tellingly, the jury's request to review Hall's interrogation was accompanied by a question concerning an element of the crime of accessory-after-the fact. *See* Doc. 16-9, Ex. I at 1327-34. Nothing in the record supports an inference that the jury reviewed Hall's interview to assess any offense for which Black was convicted. Thus, the fact that the jury during deliberations reviewed Hall's videorecorded statement deserves little weight.

it impossible for Black to confront Hall as an adverse witness. Doc. 8 at 11-16. The parties agree that Black exhausted this claim by raising in his Rule 3.850 proceeding and postconviction appeal. Doc. 8 at 16-17; Doc. 15 at 28-32.

## A.    *The State Court's Decision*

Black presented this claim to the state courts as "Ground One" of his amended Rule 3.850 motion. Doc. 16-17, Ex. Q at 3-6. The state circuit court conducted an evidentiary hearing where Black was assisted by counsel. Doc. 16-26, Ex. Z at 1714-63 in ECF (Evidentiary Hr'g. Tr.); *Id.* at 96-1711 in ECF (Evidentiary Hr'g. Exs.).

The state circuit court denied relief on all claims. Doc. 16-24, Ex. X. The court made these findings of historical fact relevant to this claim:

> [O]n August 22, 2012, Defendant was charged by indictment for First-Degree Murder and Possession of a Firearm by a Convicted Felon. *Attach. A.* Defendant was represented by conflict attorney Clyde Taylor. On October 16, 2013, the State motioned for a consolidated trial. *Attach. B.* Initially, Mr. Taylor objected to the consolidated trial but later withdrew the objection. During the September 30, 2021 [postconviction] evidentiary hearing, Mr. Taylor testified regarding his withdrawal of the objection and determination to proceed with a consolidated trial, stating:
>
>> So, basically, while we discussed severance at some point in time, it was my determination

that because Hall would have to be – my client would have [to] be convicted of first degree murder in order for Hall to be charged or convicted of his – in his case. And by using the overall effects of two lawyers, two cross-examinations and what have you and impeachment as well as examining the issue of how bad the statement of Hall hurt my client versus how – what positives there were to take from it, my decision was made. And it was discussed with Ms. Jordan [Taylor's investigator], and it was discussed with the client. It was discussed with Mr. Harrison [Hall's defense counsel], and I'm sure he talked to his client about it.

*Evidentiary Hearing* at 9. Defendant then proceeded to trial with his co-defendant Mr. Hall who was represented by Attorney Baya Harrison. On January 24, 2014, Defendant motioned for mistrial due to a late discovery violation. The Court granted the motion and a mistrial was declared. *Attach. C.* The discovery violation does not have any impact on the grounds for postconviction relief in Defendant's instant Motion.

In the second trial, Defendant again proceeded to a consolidated trial with Mr. Hall and an interview between a Detective Weaver and Mr. Hall was played for the jury. *Defendant's Exhibit 2d* at 398-439. The interview included a statement by Mr. Hall recalling seeing Defendant with a gun after the shooting incident. *Defendant's Exhibit 2d* at 434. Despite Mr. Hall's statement being entered, he declined to testify in the trial and a <u>Bruton</u> issue was raised. *Defendant's Exhibit 2f* at 622-23.

After Mr. Hall's interrogation was played during the second trial, the Court held a sidebar where they discussed the potential <u>Bruton</u> issue. . . . The Court found the error to

be harmless in its analysis and the trial proceeded to deliberations shortly thereafter. [*Defendant's Exhibit 2f*] at 643-644.

In response to the issue of Mr. Hall potentially not testifying during trial Mr. Taylor said the following at the [postconviction] evidentiary hearing:

> Yeah, we had talked about whether there was ever going to be a guarantee Hall was going to testify, and I knew from talking to Mr. Harrison that he hadn't made that decision. And it became obvious in the first trial that he wasn't going to testify, and I knew he probably wouldn't testify in the second trial unless something significantly different occurred. It did not change my thought process on the issue of a <u>Bruton</u> severance until just to try to make the record at the end of the second trial I raised it, which was denied, of course, by the Judge.

> Q:    And you said you discussed having a joint trial with Mr. Black, and he was in agreement?

> A:    There was – this was pretty early on, and I went back and finally got into my old server and looked at timelines. Back on July 12th of '13, which was six or seven months before the trial, there had been – an issue had come up, and I had had a conversation with my client for about three hours – I'm not sure – at the jail, and I think Ms. Jordan was with me. I'm not sure how much everything was discussed with the exception [that] at that time I knew we had discussed stand your ground, self-defense, and what have you.

*Evidentiary Hearing* at 13.

Page 20 of 31

Doc. 16-24, Ex. X at 2-4 (footnotes omitted).

The state circuit court denied relief on Black's ineffective-assistance

claim as follows:

In Defendant's first ground, he argues he suffered ineffective assistance of counsel for failing to sever the trial of Defendant from that of codefendant Mr. Hall. As stated above, Defendant's first trial ended in a mistrial. Mr. Hall declined to testify during the second trial. The Defendant therefore takes the position that trial counsel was ineffective for failing to sever the second trial, arguing Mr. Taylor should have anticipated Mr. Hall would not testify in the second trial, and his inculpatory statement he made during interrogation would not be subject to cross examination.

The Defendant carries the burden set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984): "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." In deciding whether defense counsel's performance at trial was deficient, "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.["] Hunter v. State, 175 So. 3d 699, 705 (Fla 2015) (quoting Strickland, 466 U.S. at 689). More simply put, a non-prevailing strategy by trial counsel "does not render the strategy unreasonable or deficient. Hall v. State, 212 So. 3d 1001, 1020 (Fla. 2017) (quoting Bradley v. State, 33 So. 3d 664, 681 (Fla. 2010).

Defendant, nevertheless, contends Mr. Taylor was forewarned of the likelihood of prejudice to this client as Mr. Hall declined to testify in the first trial, and should have changed his strategy to move to sever the Defendants. The first trial, however, resulted in a mistrial and did not result in a rendered verdict. Therefore, Mr. Taylor was given no indication that his strategy not to sever the defendants would result in an adverse outcome for Defendant. In addition, Mr. Taylor had considered the possibility of Mr. Hall not testifying and stated: "a decision had not been made as to whether Hall would testify or not. My decision was whether he did or didn't, I was going to be able to rely on the more positive aspects of his statement as opposed to the negative." *Evidentiary Hearing* at 22.

Early in the first trial, Defense counsel decided to argue a theory [of] self-defense. During the opening statement in the first trial Mr. Taylor stated: "This is a classic case of self-defense after being fired upon and wounded." *Defendant's Exhibit 1a* at 38. Likewise, in Defendant's second trial, Mr. Taylor left open a theory of self-defense. In the evidentiary hearing Mr. Taylor provided:

Q:    Okay. Do you recall him discussing a theory of self-defense with you?

A:    Yes, that came up – again, I think that came up in that three-hour meeting at the jail back in July of '13 . . . He did not want to testify, and, basically, that's where we were. We set the case, as it worked out, and how we presented it in the end was by not specifically raising self-defense but going after and talking about if you believe – even if you believe the State's case and their witnesses that were all over the park as far as whether or not my guy had the gun and fired first or whatever,

> this was excusable or – excusable homicide,
> possibly even justifiable or self-defense . . . I think
> we were on track to do that in both cases. My
> presentation suggested no premeditated, and it
> suggested the possibility of both excusable or –
> basically, possibly a self-defense in conjunction
> with the inconsistent statements of the State's
> witnesses.

*Evidentiary Hearing* at 15-16. During closing in the second trial, Mr. Taylor argued: "How much time does he have to think when he sees this guy charging and Mr. Murray running right after him with that shotgun? And what goes through your mind at that point in time? I better defend myself . . . Was it a conscious thought to kill someone or was it simply to try to buy time and defuse the situation and fire a shot and get the heck out of there." *Defendant's Exhibit 2f* at 752. Defense counsel conceived of a valid trial strategy of self-defense. Mr. Taylor, therefore, put forth a coherent strategy to argue reasonable doubt against Defendant's First-Degree Murder charge and his decision to not sever did not prejudice his strategy. See Davis v. State, 928 So. 2d 1089, 1120-1121 (Fla. 2005) (Trial counsel's performance was not deficient when self-defense theory advanced during trial was to lessen the degree of the charged murder, counsel was able to elicit testimony and evidence i[n] support of the theory, and the jury was instructed on self-defense).

Lastly, despite Mr. Hall's inculpatory statement being admitted against Defendant, this was just one of many eyewitness accounts that testified seeing Defendant in possession of a firearm. See *Defendant's Exhibit 2b* at 56-58, 119-124, and 160-165. Mr. Taylor also recalled the testimony of the eyewitness[es] during the evidentiary hearing as well.

> Q:    Is it your recollection that the State called
> three witnesses, Wood, Bunch, and Murray, who

all established your client was carrying a firearm at the time of the shooting?

A:    Yes.

Q:    And at least two of the three witnesses also testified that they observed Mr. Black fire the firearm that he was holding; isn't that correct?

A:    Yes.

*Evidentiary Hearing* at 25. Even if testimony resulting in a <u>Bruton</u> error occurs during trial, the error is harmless in light of significant evidence linking the Defendant to the charged offense. <u>See</u> <u>Rimmer v. State</u>, 59 So. 3d 763, 788. Additionally, the jury was specifically instructed on weighing the evidence of the case. *Attach. E.*

The Court finds neither prong of <u>Strickland</u> has been established. Defendant was not prejudiced by Mr. Taylor's performance as counsel. Nor was Mr. Taylor ineffective in strategically deciding not to sever. <u>See</u> <u>Lines v. State</u>, 143 So. 3d 1018, 1020 (Fla. 4th DCA 2014) (No error found when co-defendants were tried together and evidence was presented in a way that allowed the jury to distinguish between each defendant's conduct and then apply the law to each defendant separately). To the extent Mr. Taylor may have been ineffective, the Court finds that such error was harmless error as it did not conflict with Mr. Taylor's self-defense strategy. Therefore, Ground One of Defendant's Motion is **DENIED**.

Doc. 16-24, Ex. X at 4-7 (footnote omitted). The First DCA affirmed without explanation. Doc. 16-29, Ex. CC.

**B.** *Clearly Established Federal Law*

The Supreme Court applies the two-pronged *Strickland* standard—identified by the state court—for evaluating claims of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687. The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." 466 U.S. at 688. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different trial outcome. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the

Page 25 of 31

performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698.

### C.    *Black Is Not Entitled to Habeas Relief*

The First DCA's summary affirmance is an "adjudication on the merits" of Black's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 99. Because the First DCA's order is unexplained, this court employs the following "look through" presumption: "[T]he federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). In other words, this court presumes that the First DCA rejected Black's claim for the reasons provided by the state circuit court.

Black does not challenge any factual determination by the state court. He argues only that the state court's application of the *Strickland* standard was unreasonable. Doc. 8 at 15-16. Black, however, fails to make that showing.

The state court determined that Mr. Taylor made a strategic decision not to oppose a joint trial. This determination is amply supported by Taylor's evidentiary hearing testimony and is presumed correct. Doc. 16-26, Ex. Z at 1721-30, 1735-37, 1738-39.

The state court properly applied *Strickland*'s deficiency prong, as it considered whether counsel's strategic decision could be considered sound strategy. *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). The state court reasonably determined that, regardless of whether the admission of Hall's statement violated *Bruton*, a competent attorney could have decided to proceed with a joint trial based on the belief that the advantages of a joint trial far outweighed the marginally detrimental effect of Hall's statement.

For starters, the only incriminating portion of Hall's statement was that he saw Black with a gun during the incident. In other portions of his statement, Hall stated *seven times* that he never saw Black with a gun that night. *See* Doc. 16-9, Ex. I at 954, 958, 959, 966, 967, 973 in ECF. Regardless, the jury heard untainted, corroborated evidence that Black possessed a handgun during the incident.

Hall made several other statements that benefitted Black. Hall stated that he *did not see Black fire a gun*; that he *did not see Black shoot Carr*; and that *Patrick Murray was aiming his shotgun at Hall's car* when they were on the road. Doc. 16-9, Ex I at 973-74, 978, 979 in ECF.

Additionally, most of Hall's statements were potentially beneficial to Black in terms of showing lack of premeditation and/or that the homicide was justified. Doc. 16-9, Ex. I at 939-79 in ECF. A joint trial also gave Black the benefit of an additional, independent cross-examination and impeachment of each State's witness (by Hall's experienced defense counsel).

Viewing the entire record, including Mr. Taylor's evidentiary hearing testimony, a fairminded jurist could agree with the state court's conclusion that Taylor made a sound strategic decision not to sever the trial. Federal habeas relief may be denied on this basis alone. *Strickland*, 466 U.S. at 697.

Even reviewing *Strickland*'s prejudice prong, the state court properly considered whether Black established prejudice resulting from a joint trial and the jury hearing Hall's statement. Although the admission of Hall's statement violated *Bruton*, there is not a reasonable

probability the result of Black's trial would have been different had Black been tried separately and the jury not heard Hall's statement. As discussed at length above, there was other—untainted, corroborated and overwhelming—evidence of Black's guilt of second-degree murder. *See supra* Part I and Part III, Ground One; *Cf. Sears v. Warden GDCP*, 73 F.4th 1269, 1296 (11th Cir. 2023) ('[T]he *Strickland* prejudice standard is more stringent (from a petitioner's perspective) than the *Brecht* 'substantial and injurious effect' standard.").

For all of the foregoing reasons, Black is not entitled to habeas relief on Ground Two.

## IV.  A Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a

constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). At the COA stage, the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. *Buck v. Davis*, 580 U.S. 100, 115 (2017). Here, Petitioner has not made the requisite demonstration. Accordingly, the District Court should deny a certificate of appealability in its final order.

Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation, the relevant party shall file such an objection with the District Court.

## V. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. The amended petition for writ of habeas corpus, Doc. 8, challenging Petitioner's judgment of conviction in *State of Florida v.*

*Darren L. Black*, Leon County Circuit Court Case No. 2012-CF-2432, be

**DENIED**.

    2.    The District Court **DENY** a certificate of appealability.

    3.    The clerk of court close this case file.

At Panama City, Florida, this <u>25th</u> day of October, 2024.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters. *See* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only.</u> A party must serve a copy of any objections on all other parties. A party who fails to object to this report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**